## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

FREMONT REORGANIZING
CORPORATION,
          Plaintiff,

vs.

RONNIE DUKE, et al.
          Defendants.

Case No. 2:10-cv-11923
Hon. David M. Lawson

---

### REAL ESTATE ONE, INC.'S
### MOTION TO DISMISS AND MOTION FOR SUMMARY JUDGMENT

NOW COMES Real Estate One, Inc. (hereinafter "REO") by and through its attorneys Wood, Kull, Herschfus, Obee & Kull and moves this Honorable Court to dismiss Plaintiff's Complaint pursuant to Fed. R. Civ. P 12(b)(6) and for Summary Judgment, pursuant to Fed. R. Civ. P 56, for the following reasons:

1.      On May 12, 2010, Plaintiff Fremont Reorganizing Corporation (hereinafter "Fremont" or "Plaintiff") filed a ten Count, 112 page Complaint alleging that it was the victim of mortgage fraud based upon a criminal scheme masterminded by Ronie Duke and others, the principals of that criminal scheme, including Defendant Duke, being under Federal criminal indictment.

2.      Among the many Co-Defendants, identified generically, who allegedly participated in Defendant Duke's scheme is the moving party in these Motions, Defendant Real Estate One.

3.      And while Fremont makes specific allegations of criminal wrongdoing as to two Defendants, Abdul-Majid Bazzi a/k/a Sam Bazzi and Jamie Sweeney, licensed real estate salespersons formerly associated with REO, the Complaint nowhere in its 411 paragraphs identifies any wrongdoing on the part of REO.

4.     In addition, while Plaintiff claims that REO has liability through the actions of "their agents," i.e., Bazzi and Sweeney, nowhere in the Complaint is their any allegation that Bazzi and Sweeney were acting within the scope of their association with REO in performing the criminal acts they are alleged to have performed, nor is there any allegation that REO "knew" of or "asserted" to the wrongdoing on the part of Bazzi and Sweeney.

5.     The United States Supreme Court has held that a Complaint is subject to dismissal pursuant to Fed. R. Civ. P 12(b)(6), where, as in the present case, the party has failed to plead facts that "state a claim that is plausible on its face." Ashcroft v Iqbal _____ U.S. _____; 129 S. Ct 1937; 173 L. Ed 2d 868 (2009).

6.     On the face of Plaintiff's Complaint, Plaintiff has plead "no" plausible facts for which it is entitled to relief as to REO, and the Court should grant REO's Motion to Dismiss.

7.     Furthermore, following Iqbal, Federal District Courts have granted 12 (b)(6) Motions early on in RICO actions, where, as in the present case, allowing discovery would only create unjustified and unjustifiable cost and expense to a Defendant, where wrongdoing was not properly and plausibly plead. See, e.g., Lind v New Hope Property, LLC, 2010 U.S. Dist LEXIS 36672.

8.     Plaintiff's Complaint is also subject to Summary Judgment as to REO pursuant to Fed. R. Civ. P 56.

9.     The only claims made against REO are found in Count I of the Complaint, which is based upon violations of 18 U.S.C. § 1962(c) (RICO), and it is well established that the statute of limitations for bringing a RICO complaint is four years. Agency Holding Corp. v Malley-Duff & Assoc., 483 U.S. 143; 107 S. Ct. 2759; 97 L Ed 2d 121 (1987).

10.      It is undisputed that all of the real estate transactions that Plaintiff has attributed to REO "through their agents," Sweeney and Bazzi, closed in 2005, well over four years before Plaintiff brought suit and therefore, the RICO claim is barred under the "injury occurrence rule" for the RICO statute of limitation.  Khler v A.O. Smith Corp., 521 U.S. 179; 117 S.G. 1984; 138 L. Ed. 2d 373 (1997).

11.      Further to the extent that Plaintiff may claim that it is entitled to pursue its cause of action under the "injury discovery rule," Plaintiff's Complaint is also subject to dismissal, as Plaintiff was specifically put on notice of potential injury based upon transactions in which Jamie Sweeney was involved, through a suit that was brought in Wayne County Circuit Court, being case number 05-536402-CK, but despite this notice of mortgage fraud, Plaintiff specifically "waived" its right, in writing, to pursue a claim, thus, barring any cause of action brought under RICO, over four years after the fact.  Isaak v Trumbull Sav. & Loan Co., 169 F. 3d 390 (6th Cir 1999).

WHEREFORE Real Estate One, Inc. requests this Honorable Court grants its Motion to Dismiss pursuant to Fed. R. Civ. P 12(b)(6) and grant its Motion for Summary Judgment, pursuant to Fed. R. Civ. P 56, and grant such other relief as the Court deems justified under the circumstances.

Respectfully submitted,

WOOD, KULL, HERSCHFUS, OBEE & KULL, P.C.


By: _____/s/ John A. Obee_____
            John A. Obee (P29216)
            jao@woodkull.com
            Attorneys for Defendant Real Estate One, Only
            37000 Grand River Avenue, Suite 290
            Farmington Hills, MI  48335
            (248) 476-2000

Dated:   July 19, 2010

3

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

FREMONT REORGANIZING
CORPORATION,

          Plaintiff,

vs.                                                  Case No. 2:10-cv-11923
                                                     Hon. David M. Lawson

RONNIE DUKE, et al

          Defendants.

_____

## TABLE OF CONTENTS

Page

Index of Authorities . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ii

I.    INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

II.   STATEMENT OF FACTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

III.  LEGAL ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

       A.    PLAINTIFF'S COMPLAINT AGAINST REAL
            ESTATE ONE, INC. SHOULD BE DISMISSED
            UNDER FED.R.CIV.P 12(b)(6) BECAUSE THE
            PLAINTIFF HAS FAILED TO STATE A CLAIM
            AGAINST REAL ESTATE ONE, INC. UPON
            WHICH RELIEF MAY BE GRANTED . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

            1. Motion to Dismiss Standard . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10
            2. Allegations against REO in Plaintiff's Complaint . . . . . . . . . . . . . . . 11
            3. Vicarious liability for RICO violations . . . . . . . . . . . . . . . . . . . . . . . . 12
            4. The Complaint fails to allege facts which give rise
              to vicarious liability . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

       B.    SUMMARY JUDGMENT SHOULD BE ENTERED
            IN FAVOR OF DEFENDANT REAL ESTATE ONE,
            INC. BECAUSE THERE IS NO GENUINE ISSUE
            OF MATERIAL FACT AND REAL ESTATE ONE,
            INC. IS ENTITLED TO JUDGMENT AS A
            MATTER OF LAW . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

            1. Summary Judgment Standard . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16
            2. Plaintiff's RICO claims are time-barred . . . . . . . . . . . . . . . . . . . . . . . 17
             a. The four-year statute of limitations and
               accrual of RICO claims . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17
             b. Plaintiff's RICO claims are barred under
               the injury occurrence rule . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19
             c. Plaintiff's RICO claims are barred under
               the injury discovery rule . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

IV.   CONCLUSION AND RELIEF REQUESTED . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

i

## INDEX OF AUTHORITIES

**CASES:** **Page**

*Agency Holding Corp. v Malley-Duff & Assoc., Inc.,*
483 U. S. 143; 107 S. Ct. 2759; 97 L. Ed. 2d 121 (1987) . . . . . . . . . . . . . . . . . . . . . . . . . . 3,17,19

*Ashcroft v Iqbal,* _____ U. S. ____;129 S. Ct. 1937; 173 L. Ed 2d 868 (2009) . . . . . . . . . . . 2,10

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555;127 S. Ct. 1955; 167 L. Ed. 2d 929 (2007) . . . . 10

*Brady v. Dairy Fresh Products Co.*, 974 F. 2d 1149, 1154 (9th Cir. 1992) . . . . . . . . . . . . . . . . 13

*Brown v. Brown*, 478 Mich 545, 739 N. W. 2d 313 (2007) . . . . . . . . . . . . . . . . . . . . . . . . . . 14,15

*Caron v. Walmart Stores, Inc*., No. 254915, 2005 Mich. App. LEXIS 1366,
2005 WL 1278480 at * 2 (Mich. Ct. App. May 31, 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Cedric Kushner Promotions, Ltd. v. Don King*,
533 U. S. 158, 121 S. Ct. 2087, 150 L. Ed. 2d 198 (2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Celotex Corp. v. Catrett,* 477 U.S. 317; 106 S. Ct. 2548; 91 L.Ed.2d 265 (1986) . . . . . . . . . . . 16

*Coffey v. Foamex L.P.*, 2 F.3d 157, 161-162 (6th Cir. 1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Conley v. Gibson*, 355 U. S. 41, 45; 78 S. Ct. 99; 2 L. Ed. 2d 80 (1957) . . . . . . . . . . . . . . . . . . 10

*Courie v. Alcoa Wheel & Forged Products,*
557 F. 3rd 625, 629; 2009 WL 2497928, *2 (6th Cir. 2009) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*D & S Auto Parts, Inc. v. Schwartz*, 838 F. 2d 964, 968 (7th Cir), cert. denied,
486 U. S. 1061, 100 L. Ed. 2d 993, 108 S. Ct. 2833 (1988) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Davis v. Mutual Life Ins. Co. of New Yor*k, 6 F. 3rd 367 (6th Cir. 1993) . . . . . . . . . . . . . . . . 12,13

*Doe v. Shapiro*, 2008 Mich App LEXIS 467 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Garrett Tool & Engineering, Inc.*, 2002 U.S. District LEXIS 1862 (E.D. Mich. 2002) . . . . . . . 16

*Harner v. Prudential-Bach Sec., Inc.*,
35 F. 3d 565 (table), 1994 WL 494871, at 4 (6th Cir. 1994). . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

*Isaak v. Trumbull Sav. & Loan Co.*, 169 F. 3d 390, 397 (6th Cir. 1999) . . . . . . . . . . . . . . 4,21,23

*Klehr v. A.O. Smith Corp.* 521 U. S. 179, 185-86; 117 S. Ct. 1984;
138 L. Ed. 2d 373 (1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3,17,18,19,20

*Jackson v. Sedgwick Claims Mgt. Servs., Inc.*,
2010 U.S. Dist LEXIS 22792 (U. S. Dist. Ct., ED MI 2010) . . . . . . . . . . . . . . . . . . . . . . . 11,16

*Lampf, Pleva, Lipkind, Prupis & Petigrow v. Gilbertson*,
501 U. S. 350, 352 n. 8, 11 S. Ct. 2773, 2782, n. 8, 115 L.Ed.2d 321 (1991) . . . . . . . . . . . . . 20

*Lind v New Hope Property, LLC*, 2010 U.S. Dist LEXIS 36672 . . . . . . . . . . . . . . . . . . . . . . . . . 3

*Louw v. Elgin*, 1990 U.S. App. LEXIS 17774 (6th Cir. Oct. 5, 1990) . . . . . . . . . . . . . . . . . . . . 16

*Luthi v. Tonka Corp.*, 815 F. 2d 1229, 1230 (8th Cir. 1987) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp.*,
475 U.S. 574; 106 S.Ct. 1348; 89 L.Ed.2d (1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16,17

*McMullen v. Duddles*, 405 F. Supp. 2d 826, 830 (W.D. Mich. 2005) . . . . . . . . . . . . . . . . . . . . . 13

*Merlau v. Kalamazoo Circuit Judge*, 180 Mich 393, 397; 147 N. W. 503 (1914) . . . . . . . . . . . 21

*Rogers v. J.B. Hunt Transp., Inc.*, 466 Mich. 645, 650-51, 649 N.W.2d 23 (2002) . . . . . . . . . . 13

*Rotella v. Wood*, 528 U. S. 549; 120 S. Ct. 1075; 145 L. Ed. 2d 1047 (2000) . 17,18,19,20,22,23

*Schofield v. First Commodity Corp.*, 793 F. 2d 28, 32-33 (1st Cir. 1986) . . . . . . . . . . . . . . . . . . 12

*Sedima, S.P.R.L. v. Imrex Co.,*
473 U. S. 479, 489, 105 S. Ct. 3275, 87 L. Ed. 2d 346 (1985) . . . . . . . . . . . . . . . . . . . . . . . . . 18

*Sims v. Ohio Cas. Ins. Co.*, 151 Fed. Appx. 433 (6th Cir. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . 22

*Taylor Group v. ANR Storage Co.* 24 Fed Appx. 319 (6th Cir. 2001) . . . . . . . . . . . . . . . . . . . . . 22

*Weinstein v. Siemens*, 673 F. Supp. 2d 533, 542 (E.D. Mich. 2009) . . . . . . . . . . . . . . . . . . . 13,15

*Zenith Radio Corp. v. Hazeltine Research, Inc.*,
401 U. S. 321, 338, 91 S. Ct. 795, 806, 28 L. Ed. 2d 77 (1971) . . . . . . . . . . . . . . . . 16,18,19,20

## STATUTES:

18 U.S.C. §1962(c), (d) (RICO) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 3,11,12

18 U.S.C. §1961(3) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

M.C.L. 418.119 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

15 U.S.C. §15b . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

## **RULES**

Fed. R. Civ. P. 12(b)(6) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 3, 10, 16, 24

Fed. R. Civ. P. 56 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

Fed. R. Civ. P. 9(b) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

Fed. R. Civ. P. 56(c) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

FREMONT REORGANIZING
CORPORATION,
        Plaintiff,

vs.

                                        Case No. 2:10-cv-11923
                                        Hon. David M. Lawson

RONNIE DUKE, et al.
        Defendants.

_____

**REAL ESTATE ONE, INC.'S BRIEF IN SUPPORT OF**
**MOTION TO DISMISS AND MOTION FOR SUMMARY JUDGMENT**

I.    **INTRODUCTION**

      Plaintiff, Fremont Reorganizing Corporation (hereinafter "Fremont" or "Plaintiff") has filed

a 112 page Complaint, consisting of 411 individual paragraphs and 10 Counts, alleging in paragraph

1 of the Complaint that Fremont is seeking compensation for losses "caused by the misconduct of

numerous persons and entities associated with Defendant Ronnie Duke." (Complaint, paragraph 1,

sentence 1). In the second sentence of paragraph 1 of the Complaint, Fremont alleges that Defendant

Duke assisted by other generically identified Defendants, "devised and implemented a scheme to

defraud Fremont" by means of false and fraudulent representations. Among the generic Defendants

who Plaintiff has alleged defrauded Fremont is the moving party in this Motion, Defendant Real

Estate One, Inc. (hereinafter "REO"). Two other Defendants that are named in the Complaint are

Abdul-Majid Bazzi a/k/a Sam Bazzi (hereinafter "Bazzi") and Jamie Sweeney (hereinafter

"Sweeney") who are identified in paragraphs 19 and 57 of the Complaint, respectively, as having

been real estate agents for REO.[1]

_____

      [1]The Court should be aware that both Bazzi and Sweeney were licensed real estate
salespersons, associated with REO, pursuant to independent contractor contracts, and, as will be

Throughout Plaintiff's very lengthy Complaint, Plaintiff makes specific factual allegations involving fraud or wrongdoing on the part of Bazzi and Sweeney. For example in paragraphs 92 and 93 of the Complaint, Plaintiff alleges that Bazzi and/or Sweeney were involved in locating homes to be purchased through "straw loans in the names of straw buyers" or, alternatively recruited persons to act as "straw buyers for the properties in both straw and ghost loan transactions." These specific factual allegations should be contrasted with the allegations made against REO. No where in any paragraph of the Complaint (only 15 paragraphs out of 411 mention REO at all) is there any specific, factual allegation of wrongdoing on the part of REO. There is no allegation that Real Estate One, Inc. "knew" of the criminal wrongdoing of Bazzi or Sweeney or that REO "assented" to the criminal wrongdoing of Bazzi and Sweeney. Rather, in each of the 15 paragraphs of the Complaint in which Plaintiff purports to ascribe wrongdoing to REO, Plaintiff repeatedly and consistently accuses REO of violating 18 U.S.C. §1962(c), (d) (RICO) by alleged, undefined acts "through their agents," i.e., Bazzi and Sweeney. See, e.g., Complaint ¶92. All of the alleged wrongdoing ascribed to REO is alleged to have been committed "through their agents," with no specificity as to how, why, when or where REO itself did anything of a factual nature that violated 18 U.S.C. §1962(c), (d). Because there are "no" facts in this Complaint that Plaintiff has plead that demonstrate any wrongful acts on the part of REO, Plaintiff's claim is subject to dismissal pursuant to Fed.R.Civ.P. 12(b)(6).

The United States Supreme Court and the lower Federal Courts have held that a Complaint is subject to dismissal pursuant to Fed.R.Civ.P. 12(b)(6) where a party has failed to plead facts that accepted as true "state a claim to relief that is plausible on its face." *Ashcroft v Iqbal*, ____ U. S.

---

more fully developed in the Statement of Facts section and, at least as to Sweeney, Sweeney's association with REO was severed when REO learned for the first time of Sweeney's involvement with certain real estate transactions that are at issue in this lawsuit that REO believed may have been criminal in nature.

____;129 S. Ct. 1937; 173 L. Ed 2d 868 (2009). On the face of this Complaint, Plaintiff has plead no plausible facts for which it is entitled to relief as to REO Further, following *Iqbal*, Federal District Courts have granted 12(b)(6) motions to dismiss early on in cases involving RICO claims where, as in the present case, allowing discovery would only create unjustified and unjustifiable cost and expense to a Defendant, where wrongdoing is not properly and plausibly plead. See, e.g., *Lind v New Hope Property, LLC*, 2010 U.S. Dist LEXIS 36672. Based upon *Iqbal* and *Lind*, REO's Motion to Dismiss should be granted.

Further, Plaintiff's Complaint is also subject to Summary Judgment, at least as to REO pursuant to Fed.R.Civ.P. 56. The only claims made against REO are found in Count I of the Complaint, which is based upon Violations of 18 U.S.C. §1962(c), (d) (RICO). It is well established that the statute of limitations for bringing a complaint under RICO is four (4) years. See, *Agency Holding Corp. v Malley-Duff & Assoc., Inc.,* 483 U. S. 143; 107 S. Ct. 2759; 97 L. Ed. 2d 121 (1987). It is undisputed that all of the transactions that Plaintiff has attributed wrongfully to REO "through their agents," Sweeney and Bazzi, closed in 2005, well over four years before Plaintiff brought suit on May 12, 2010. See Complaint ¶¶102 and 104. Plaintiff's claim is therefore barred under the injury occurrence rule for the RICO statute of limitation. *Khler v. A.O. Smith Corp.*, 521 U. S. 179; 117 S. Ct. 1984; 138 L. Ed. 2d 373 (1997). Further, to the extent that Plaintiff may claim that it "did not" nor "could not" have discovered the fact that it had been "injured" pursuant to a violation of the RICO statute, Plaintiff's claim as against REO is also barred under the injury discovery rule, as Plaintiff was specifically put on notice in early 2006 of potential injury based upon

3

transactions in which Defendant Sweeney was involved, and in writing "waived" its right to pursue

a claim, thus barring any cause of action brought under RICO, over four years after the fact. *Isaak*

*v. Trumbull Sav. & Loan Co.*, 169 F. 3d 390, 397 (6th Cir. 1999).

II.    **STATEMENT OF FACTS**

Sweeney and Bazzi were licensed real estate salespersons associated with REO in February

2002 and March 2005.  Their association with REO was as independent contractors, pursuant to their

Independent Contractor Agreements.  (See **Exhibits A** and **B** attached).  As set forth in their

Independent Contractor Agreements, Sweeney and Bazzi specifically agreed to conform their actions

and behavior consistent with all laws and regulations.  Paragraph four of the Independent Contractor

Agreements provides:

> 4. Broker and Salesperson agree to conform to and abide by all laws,
> rules and regulations and codes of ethics that are binding upon or
> applicable to real estate brokers and real estate salespersons.
> Salesperson agrees to conduct his/her business and regulate his/her
> habits so as to maintain and to increase the good will and reputation
> of the Broker and the Salesperson.

During the course of its association with Sweeney and Bazzi, REO was not aware of any criminal

or illegal behavior on their part.[2]  This all changed at the end of 2005.

As the Affidavit of Ellen M. Tickner, REO's Senior Vice President, Secretary and General

Counsel, attached as **Exhibit C**, sets forth, toward the end of 2005, Defendant Sweeney

consummated four residential real estate transactions outside of the company, without REO's

---

[2]As the Court can see from paragraph 11 of the Independent Contractor Contracts, REO has
an agreement to assume the defense of its independent contractors when they are joined "in the same
legal or administrative action," with the exception being for situations such as the present one, which
arise out of the independent contractor's "dishonest or illegal acts."  Thus, REO is not providing a
defense to either Sweeney or Bazzi, due to the criminal nature of their activities related to this
matter.

knowledge and turned them in for processing after the fact. Sweeney also turned in commission checks payable to REO in an amount in excess of $300,000.00. Representatives of REO to whom these files were turned in were alarmed by the nature of the transactions and the amount of the commissions that would be paid to Sweeney and believing that there might be activities of a criminal nature involved, began an investigation. As part of its investigation, the REO representatives interviewed Sweeney and inquired if there were any other transactions of a similar nature that she had not turned in. Sweeney identified eight additional transactions which documents awaited execution and fourteen transactions pending closing. In the course of their investigation of her unauthorized transaction files that Sweeney turned in (three of which,  8674 Oakside Avenue, Commerce Township, 8271 Cooley Beach Drive, White Lake, Michigan and 6739 Wellesly Terrace, Clarkston are involved in the present litigation) representatives of REO found what appeared to be multiple irregularities including but not limited to: Sales prices in excess of the value of the property; sales prices in excess of the listing price being asked for by the seller, with the excess amount to be paid in the form of commissions; and excessive brokerage fees and commissions ranging from a low of 16.1% to a high of 20.52%.

As a result of its investigation, REO did the following: (1) Terminated Sweeney's association with REO effective December 7, 2005; (2) Sent letters dated December 8, 2005 to Sweeney's sellers terminating the Commission Protection Agreements on her pending transactions; (3) Refused to pay Ms. Sweeney the $334,142.00 in commissions and placed that amount in an escrow account; and (4) Notified Federal, State and local prosecutors of the transactions and its belief that criminal activity was involved (see **Exhibit D** attached, letter dated December 16, 2005 by REO's Senior Vice President, Secretary and General Counsel).

5

Because REO refused to pay Sweeney the Commissions, Sweeney sued REO on December 22, 2005. (See **Exhibit E** Complaint attached). REO, through this undersigned counsel, filed a Counterclaim (see attached as **Exhibit F**, without exhibits), in which it stated that Sweeney was not entitled to the Commissions because, inter alia she had breached her Independent Contractor Agreement with REO; had violated the Code of Ethics of the National Association of Realtors; and was in violation of the codes, rules and regulations that govern real estate salespersons in the State of Michigan. Further, REO requested that the Commissions be interplead with the Court and that Sweeney be required to bring into the lawsuit "all parties," such as Fremont, who might have a valid claim to the Commissions.

The litigation between Sweeney and REO was hotly contested. While Sweeney agreed to interplead her Commissions, she vigorously opposed notification of lenders, such as Fremont, concerning their potential claims.[3] Finally, on April 20, 2006, more than four years ago, counsel for Sweeney filed a Motion for Summary Disposition and agreed to notify all parties in interest, including Fremont, of the Motion and their right to make a claim to her Commissions. (See **Exhibit G** attached, without exhibits, along with a Proof of Service showing that Fremont Investment & Loan, was specifically notified of the Motion for Summary Disposition). The Court should also note that many of the other persons who were notified of the Motion, are Co-Defendants of Defendant Sweeney in the current litigation, e.g., Paul Whiteside, David Lara, etc.).

On May 8, 2006, REO filed a Brief in Opposition to Motion for Summary Disposition and a Brief in Support of its Motion for Interpleader (see **Exhibit H** attached, without exhibits, but with

---

[3]So vigorously was this point contested that at one point in the litigation, the undersigned counsel was threatened personally with suit, if he on behalf of REO took steps to notify lenders, such as Fremont, of the apparently illegal transactions and their potential claims for the Commissions.

a Proof of Service showing that Fremont Investment & Loan, now known as Plaintiff Fremont, was

served with a copy of the Motion).  In its Brief in opposition to Sweeney's Motion for Summary

Disposition and , particularly in its Brief in Support of its Motion for Interpleader, REO outlined its

belief that mortgage fraud had occurred.  REO's Brief specifically notified Fremont of the following:

A.      [M]ortgage fraud in the State of Michigan has recently reached
        epidemic proportions.  The Detroit News, citing FBI statistics, has
        reported that mortgage fraud, in the US, has more than tripled since
        2003 and now costs more than $1 billion annually.  Furthermore,
        Michigan is recognized as an epicenter of the problem.  The FBI has
        identified Michigan as one of ten "hot spots" for mortgage fraud, in
        recognition of the fact that mortgage fraud losses in this State have
        grown from $9 million to $26 million, in just two years.  Moreover,
        the FBI acknowledges that 80% of mortgage fraud is done through
        insiders, including real estate brokers.  US Attorney Stephen J.
        Murphy, discussing Detroit's mortgage fraud problem stated "When
        mortgage fraud is widespread, it undermines the stability of the
        housing market and the ability of lending institutions to protect
        themselves from debilitating losses" which, in turn, makes banks
        more suspicious and makes it more difficult for poor people to obtain
        loans.

        It is through this prism, and with this knowledge, that Counter-
        Plaintiff REO filed its claim for interpleader. In particular, Counter-
        Plaintiff REO asserted in its Counterclaim that Plaintiff **Sweeney
        violated**: 1)  REO's policies, 2) her own statutory and ethical
        obligations as a real estate licensee and 3) **legal prohibitions against
        fraud in real estate transactions**.  For these reasons, and the
        likelihood that **innocent parties would be irreparably injured** by
        the distribution of the suspect funds to Plaintiff Sweeney, Counter-
        Plaintiff REO asserted a valid claim for Interpleader, pursuant to
        MCR 3.602 (B). Exhibit H, REO's Brief, pp. 2-3 (citations omitted,
        emphasis added).

B.      [W]hen Plaintiff Sweeney's breach of trust, breach of contract, breach
        of policy and apparent **breach of State and Federal law** were made
        known to REO, REO immediately terminated its association with
        Plaintiff Sweeney and informed her that it could not disburse the
        suspect funds to her, in light of its well-founded belief that **she was**

7

**not entitled to the funds due to her conduct in procuring the suspect funds**.  Exhibit H, REO's Brief, p.13 (footnote omitted, emphasis added).

C.   [I]n light of the impropriety of Plaintiff Sweeney's conduct, viewed in light of the current epidemic of mortgage fraud, it is imperative that this Honorable Court grant Counter-Plaintiff's Counter-Motion for Interpleader of the suspect commission proceeds, to **ensure that the proper parties receive notice of the facts of these transactions and to ensure that Counter-Plaintiff Real Estate One, Inc is not exposed to liability, in relationship to these transactions, based upon Ms. Sweeney's unauthorized actions**.  Exhibit H, REO's Brief, pp.13-14 (emphasis added).

D.   The Counterclaim states, in great detail, Counter-Plaintiff REO's basis for seeking Interpleader of the suspect funds, pursuant to MCR 3.602 (B).   In particular, Counter-Plaintiff REO asserted the following grounds for Interpleader, among others:

a.      [Plaintiff **Sweeney] Entered into buyer agency contracts with buyers in which the buyers agreed that REO would receive a 3% sales commission but charged the sellers commissions ranging between 16% and 25%**;

b.      [Plaintiff **Sweeney] Caused the buyers and sellers to enter into purchase agreements in which the true sales prices were inflated by amounts equal to the exorbitant commissions charged by Sweeney**; and

c.      [Plaintiff Sweeney] **Caused her buyer clients to purchase properties for prices which far exceeded the properties' fair market values**.

*See* **Counterclaim**, ¶ 1.  These allegations, which the court must regard as true, are symptomatic of the epidemic of mortgage fraud that has infected the region.  This epidemic has been well reported in the local press, as was detailed above.  In particular, these articles note a common scenario wherein a distressed property is intentionally over appraised, a **loan for more than the property is worth** and the participants split the proceeds of the transaction and **the lender is left defrauded**.   From the documents, it appears that **this is a likely scenario regarding the four transactions in question**.  In particular, Counter-Plaintiff REO has performed a market assessment of the four **properties** and found that they each were **overvalued by more than**

8

$100,000. Exhibit H, REO's Brief, pp.17-18 (citation omitted, emphasis added).

Further, REO noted that if the funds were handed over to Sweeney, REO could be put in the exact position in which it finds itself today, being sued by a lender over the funds related to the mortgage fraud.

Despite having received a copy of Sweeney's Motion for Summary Disposition and REO's Motion and Brief in response describing the likelihood that mortgage fraud had been committed, on May 15, 2006, a representative of the legal department of Fremont Investment & Loan wrote a letter to Sweeney's counsel, specifically consenting to the distribution of the funds to Sweeney. (See **Exhibit I** attached, letter of Jodi Johnston with attached Waiver and Consent). The signed Waiver and Consent was executed over four years before the present lawsuit was filed. The signed Waiver and Consent was submitted by Plaintiff Fremont at a time when Fremont was on notice from REO that mortgage fraud had occurred in relationship to at least three of the loans involved in the captioned litigation. Based upon this notice, Fremont had an obligation to investigate further, or, at the very least, take some steps to protect its interests. It did nothing. Now, over four years later, Plaintiff seeks relief from what it was put on notice about in April 2006. On this factual basis alone, this Court should determine that the four year Statute of Limitations on any claim made by Plaintiff against REO has run, and REO is entitled to judgment as a matter of law and dismissal of the claims against it.[4]

---

[4]This Court should be aware that the Wayne County Circuit Court entered an Order prepared by the undersigned counsel on May 22, 2006 which is entitled "ORDER GRANTING INTERPLEADER AND DISMISSAL WITH PREJUDICE AS TO REAL ESTATE ONE, REGARDING PLAINTIFF'S COMPLAINT AND REAL ESTATE ONE'S COUNTERCLAIM." (See **Exhibit J** attached). There are some important provisions that were made a part of this Order and some important provisions that were not. First of all, the Court agreed to the language in paragraph C of the Order, by which the Court "permanently enjoined" all parties receiving notice of

III.   **LEGAL ARGUMENT**

   **A.   PLAINTIFF'S COMPLAINT AGAINST REAL ESTATE ONE, INC. SHOULD
        BE DISMISSED UNDER FED.R.CIV.P. 12(b)(6) BECAUSE THE PLAINTIFF
        HAS FAILED TO STATE A CLAIM AGAINST REAL ESTATE ONE, INC.
        UPON WHICH RELIEF MAY BE GRANTED**

      1.   **Motion to Dismiss Standard**

   A motion to dismiss predicated on Fed. R. Civ. P. 12(b)(6) must be based solely upon the

allegations contained in the complaint. To survive a motion to dismiss, the complaint must "contain

sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face."

*Ashcroft v. Iqbal*, ____ U. S. ____; 129 S. Ct. 1937, 1949; 173 L. Ed. 2d 868 (2009). This new

standard replaces the former "no-set-of-facts" standard of *Conley v. Gibson*, 355 U. S. 41, 45; 78 S.

Ct. 99; 2 L. Ed. 2d 80 (1957) which had prevailed for decades. The *Iqbal* standard is designed to

screen out cases that, while not utterly impossible, are "implausible." *Courie v. Alcoa Wheel &*

*Forged Products,* 557 F. 3rd 625, 629; 2009 WL 2497928, *2 (6th Cir. 2009). "A claim has facial

plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable

inference that the defendant is liable for the misconduct alleged." *Iqbal*, 129 S. Ct. at 1949. While

the Court must accept all well-pleaded facts as true, it need not "accept as true a legal conclusion

couched as a factual allegation." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555; 127 S. Ct. 1955; 167

L. Ed. 2d 929 (2007). "Threadbare recitals of the elements of a cause of action, supported by mere

conclusory statements, do not suffice." *Id.* 129 S. Ct. at 1949. "Determining whether a complaint

states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court

---

Plaintiff's Motion for Summary Disposition, including Fremont, from presenting any claim regarding
the funds at issue in the litigation. The Court, however, declined to make paragraph E a part of the
Order, which would have required Sweeney to notify all parties, including Fremont, of the existence
of the funds and their right to make claim against the funds. In any event, Fremont was on notice
because of its receipt of REO's response to the summary disposition motion.

to draw on its judicial experience and common sense.  But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not shown – that the pleader is entitled to relief." *Jackson v. Sedgwick Claims Mgt. Servs., Inc.*, 2010 U.S. Dist LEXIS 22792 (U. S. Dist. Ct., ED MI 2010) citing *Iqbal*.  "In sum, to survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim for relief that is plausible on its face." *Id.* at 48.

In the present case, the Plaintiff's complaint is not only subject to the heightened *Iqbal* standard, but also the heightened pleading requirements of Fed. R. Civ. P. 9(b) which states: "In allegations of fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." The Sixth Circuit interprets Rule 9(b) as requiring plaintiffs to "allege the time, place, and content of the alleged misrepresentation on which he or she relied; the fraudulent scheme; the fraudulent intent of the defendants; and the injury resulting from the fraud." *Coffey v. Foamex L.P.*, 2 F.3d 157, 161-162 (6th Cir. 1993) (quotation omitted).

## 2.    Allegations against REO in Plaintiff's Complaint

Plaintiff's Complaint alleges four RICO counts against REO: Violation of 18 U.S.C. 1962(c); Violation of 18 U.S.C. 1962(d); Civil Conspiracy; and Aiding and Abetting Fraud, all designated as "Count II." Plaintiff alleges that Sweeney and Bazzi, with Duke, Zundel, and fifty seven (57) other Defendants constituted an association-in-fact enterprise. Complaint ¶122. Plaintiff does not allege that REO is part of the enterprise. Instead, Plaintiff alleges only that Defendants Sweeney and Bazzi were real estate agents at REO and because of this alleged fact, REO is "associated" with the enterprise:

> "141.  Real Estate One is a person as that term is defined in 18 U.S.C. § 1961(3) and was, at all relevant times, through its agents Bazzi and Sweeney, associated with Specialty

Holdings, Duke and the Association. Through its association, Real Estate One was associated with the enterprises."

Complaint ¶141 . The Complaint further alleges that Duke, Zundel, fifty seven other Defendants, and REO:

"through their agents, knowingly conducted, participated in, controlled, manipulated, or directed one or more of the enterprises' affairs through a pattern of racketeering activity consisting of violations of the federal mail and wire fraud statutes, and the federal money laundering statutes, in violation of 18 U.S.C. § 1962(c).

Complaint ¶192. The Complaint describes the racketeering activity of REO as:

"Real Estate One, through its agents Bazzi and Sweeney, located homes to be purchased through straw loans in the names of straw buyers and fabricated agreements for ghost loans."

Complaint ¶193(s). Plaintiff's Complaint contains allegations that are, for all practical purposes, identical, in its RICO Counts for violation of 18 U.S.C. § 1962(c) and (d). (See Complaint ¶¶ 205 through 210 which all reference REO acting "through its agents."). The Complaint is completely devoid, however, of any allegations that REO is liable for the criminal and fraudulent actions of its independent contractor real estate agents.

### 3. Vicarious liability for RICO violations

The law is not well settled as to the application of the doctrine of vicarious liability in RICO cases. As stated in *Davis v. Mutual Life Ins. Co. of New York*, 6 F. 3rd 367 (6th Cir. 1993), "the doctrine remains muddied." *Id*. at 378.[5] Four circuits have refused to impose vicarious liability under RICO. See *Schofield v. First Commodity* Corp., 793 F. 2d 28, 32-33 (1st Cir. 1986); Luthi *v.*

---

[5]    The Supreme Court in *Cedric Kushner Promotions, Ltd. v. Don King*, 533 U. S. 158, 121 S. Ct. 2087, 150 L. Ed. 2d 198 (2001) touched on the subject, but did nothing to clarify its application in the present case. In *Cedric*, the Court focused exclusively on whether a corporation can be an "enterprise" and "person" in separate capacities. The Court refused to address whether *respondeat superior* principles make a corporation legally liable under RICO for the criminal acts of its employees. *Id.* 533 U. S. at 166.

*Tonka Corp.*, 815 F. 2d 1229, 1230 (8th Cir. 1987); *D & S Auto Parts, Inc. v. Schwartz*, 838 F. 2d

964, 968 (7th Cir), cert. denied, 486 U. S. 1061, 100 L. Ed. 2d 993, 108 S. Ct. 2833 (1988); and

*Brady v. Dairy Fresh Products Co.*, 974 F. 2d 1149, 1154 (9th Cir. 1992).  However, the Sixth

Circuit in *Davis* held:

> "The rule to be drawn from these cases is that plaintiffs may not use RICO to impose liability
> vicariously on corporate "enterprises," because to do so would violate the distinctiveness
> requirement.  No such prohibition, however, prevents the imposition of liability vicariously
> on corporate "persons" on account of the acts of their agents, particularly where the
> corporation benefitted by those acts."

*Davis* 6 F. 3rd at 379.  The Court held that ordinary principles of *respondeat superior* should apply:

> Here, the plaintiffs sought to impose liability on MONY as a corporate "person."  They also
> presented abundant evidence that MONY actively promoted and sponsored the scheme, and
> plainly benefitted from it through the resultant increase in its corporate income.  Under these
> circumstances, we see no reason to disregard ordinary principals of respondeat superior.

*Id. at 380.*  The 6th Circuit therefore applies ordinary *respondeat superior* standards to RICO cases.

The Michigan law of *respondeat superior* is summarized in *Weinstein v. Siemens*, 673 F. Supp. 2d

533, 542 (E.D. Mich. 2009):

> Under Michigan law, an employer's vicarious liability for the acts of its employees under the
> doctrine of respondeat superior is as follows: "[A] master is responsible for the wrongful acts
> of his servant committed while performing some duty within the scope of his employment"
> but "is not vicariously liable for acts committed by its employees outside the scope of
> employment, because the employee is not acting for the employer or under the employer's
> control." *McMullen v. Duddles*, 405 F. Supp. 2d 826, 830 (W.D. Mich. 2005) (internal
> quotations and citations omitted); *Rogers v. J.B. Hunt Transp., Inc.*, 466 Mich. 645, 650-51,
> 649 N.W.2d 23 (2002). "As a general rule, the trier of fact determines whether an employee
> was acting within the scope of his employment; however, summary disposition is appropriate
> if it is apparent that the employee was acting to accomplish a purpose of his own." *Caron v.
> Walmart Stores, Inc.*, No. 254915, 2005 Mich. App. LEXIS 1366, 2005 WL 1278480 at *
> 2 (Mich. Ct. App. May 31, 2005) (per curiam) (unpublished) (citing *Green v. Shell Oil Co.*,
> 181 Mich. App. 439, 447, 450 N.W.2d 50 (1989)).

Two recent Michigan cases involving sexual assaults by employees/or independent contractors, make

clear that an employer or contractor will not be liable for the fraudulent or criminal acts of an

13

employee or independent contractor, barring some notice of the propensity to commit the criminal

act. In *Brown v. Brown*, 478 Mich 545, 739 N. W. 2d 313 (2007), the Supreme Court held that an

employer was not liable for the criminal acts of an employee, even though there had been a series

of comments made by the employee prior to the assault. Holding that an employer will not be held

liable in such context, the Court stated:

> [h]owever, an employer can assume that its employees will obey our
> criminal laws. Therefore, it cannot reasonably anticipate that an
> employee's lewd, tasteless comments are an inevitable prelude to rape
> if those comments did not clearly and unmistakably threaten
> particular criminal activity that would have put a reasonable employer
> on notice of an imminent risk of harm to a specific victim.

*Id*. at 555.

In an even more recent decision, the Court of Appeals in an unpublished decision re-affirmed

and even expanded the holding in *Brown*. In holding that a claim for vicarious liability could not

be brought by the victim of an assault perpetrated by a contractor hired by a doctor, the Court cited

the general rule that there is no duty to protect someone from the criminal acts of a third party. *Doe*

*v. Shapiro*, 2008 Mich App LEXIS 467 (attached as **Exhibit K**). The Court stated its rationale as

follows: "[t]he rationale underlying this general rule is the fact that [c]riminal activity, by its deviant

nature, is normally unforeseeable." *Id.* The Court noted that while the question of "foreseeability"

was normally a question of fact for the jury to decide, in the *Doe* case, the plaintiff had failed to

produce any testimonial or documentary evidence to indicate that the contractor knew or should have

known that a criminal act might occur.

Thus in order for Plaintiff to allege a facially plausible claim for RICO violations against

REO, the Plaintiff must allege  facts that would allow the Court to reasonably infer that Sweeney and

Bazzi were agents of REO and were acting in the scope of their agency relationship at the time they

engaged in the criminal behavior or that REO had reason to foresee the criminal actions and failed to take steps to prevent the same. As set forth above, Sweeney and Bazzi were real estate salespersons at REO and were at all times acting under independent contractor's agreements. Under the agreements, Michigan common law, and M.C.L. 418.119, Sweeney and Bazzi were independent contractors of REO and not employees. Their duties and authority are set forth in the independent contractor's agreements. **Exhibit A and B**. Their alleged actions were outside the scope of their authority under their independent contractor agreements.[6]

### 4.    The Complaint fails to allege facts which give rise to vicarious liability

As set forth above, in order to allege a cause of action for vicarious liability of REO based upon the Sweeney and Bazzi's RICO violations, Plaintiff must allege that Sweeney and Bazzi were acting within the scope of their agency and authority at REO. Plaintiff must also allege scope of authority facts to plead a vicarious liability for civil conspiracy and aiding and abetting fraud. *Brown* and *Weinstein*, supra.

Plaintiff's Complaint fails to state a claim upon which relief can be granted because it fails to allege any facts or circumstances that would make REO vicariously liable for Sweeney and Bazzi's criminal and fraudulent actions. Instead, Plaintiff baldly alleges that REO engaged in fraudulent behavior "through its agents" Sweeney and Bazzi, who were "agents" of REO. Complaint ¶¶ 13(b), 19, and 57. There are no allegations that such actions were performed with the intention of benefitting REO, that REO authorized the conduct, that the agents were acting in the scope of

---

[6] REO did not ratify the actions of Sweeney or Bazzi, but quite the contrary, REO turned all relevant information over to the Federal, State and local prosecutors and refused to take any benefit from the transactions – requiring the funds to be interpled with the Court and requiring that Fremont be notified of Sweeney's request for disbursement of the funds.

their authority, or that REO ratified their actions.  To allow Plaintiff to proceed with its complaint

based upon its conclusory allegations of agency would violate the *Iqbal* standard, as Plaintiff has

only alleged "threadbare recitals of the elements of a cause of action [against REO], supported by

mere conclusory statements." *Iqbal*, 129 S. Ct. at 1949.  Defendant REO's motion to dismiss under

Rule 12(b)(6) should be granted – to do otherwise would only create unjustified and unjustifiable

cost and expense to REO because wrongdoing has not been properly and plausibly plead.  *Lind*,

supra.

## B.   SUMMARY JUDGMENT SHOULD BE GRANTED BECAUSE PLAINTIFF'S CLAIMS AGAINST REO ARE TIME BARRED

### 1.   Summary Judgment Standard

Summary Judgment should be granted whenever the pleadings and all supporting

documentation show that "there is no genuine issue of material fact and . . . the moving party is

entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c).  As held by the United States Supreme

Court in *Celotex Corp. v. Catrett,* 477 U.S. 317; 106 S. Ct. 2548; 91 L.Ed.2d 265 (1986), and

*Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574; 106 S.Ct. 1348; 89

L.Ed.2d (1986), the District Court must enter summary judgment when there is an absence of

evidence to establish an essential element of the plaintiff's case.    Summary judgment under

Fed.R.Civ.P 56(c) is appropriate where the statute of limitations bars Plaintiff's claims.  *Louw v.

Elgin*, 1990 U.S. App. LEXIS 17774 (6th Cir. Oct. 5, 1990).  To avoid summary judgment, the

nonmovant must present specific facts showing a genuine issue for trial.  *See In Re: Garrett Tool &

Engineering, Inc.*, 2002 U.S. District LEXIS 1862 (E.D. Mich. 2002).  The nonmovant must do more

than present some evidence on a disputed issue or raise doubt as to the existence of a fact.  Rather,

the nonmovant must produce admissible evidence that would be sufficient to require submission to

16

the jury of the dispute over the fact. *Id.* If the record as a whole could not lead a rational jury to find

for the plaintiff, the court should grant summary judgment. *Matsushita*, 745 U. S. at 586.

### 2. Plaintiff's RICO claims are time-barred

#### a. The four-year statute of limitations and accrual of RICO claims

The United States Supreme Court has held that the four-year statute of limitation in the

Clayton Act, 15 U.S.C. § 15b, applies to civil RICO actions. *Agency Holding Corp. v. Malley-Duff*

*& Associates, Inc.*, 483 U.S. 143, 156; 107 S. Ct. 2759; 97 L.Ed.2d 121 (1987). The Court adopted

the Clayton Act statute of limitation because "RICO was patterned after the Clayton Act." *Id.* at 150.

The Court concluded that:

> the similarities in purpose and structure between RICO and the Clayton Act, [and[ the clear
> legislative intent to pattern RICO's civil enforcement provisions on the Clayton Act strongly
> counsels in favor of application of the 4-year statute of limitation used for Clayton Act
> claims. 15 U. S. C. §15b.

*Agency Holding Corp.,* 483 U. S. at 152. However, in *Agency Holding* the Court did not decide

when a RICO claim accrues because the facts of that case established that the acts upon which

Plaintiff's claims were based occurred within four years from the filing of the complaint. *Id.* at 157.

In its subsequent decisions, the Supreme Court has rejected accrual rules that would extend

the time for filing RICO claims, but it has not pronounced a definitive rule on when a civil RICO

claim does accrue. *Rotella v. Wood*, 528 U. S. 549; 120 S. Ct. 1075; 145 L. Ed. 2d 1047 (2000).

The Supreme Court has identified four possible accrual rules for RICO claims: (1) the "injury

occurrence" rule, which triggers the Clayton Act statute of limitation; (2) the "injury discovery" rule,

(3) the "injury and pattern discovery" rule, and (4) the "last predicate act rule." *Klehr v. A.O. Smith*

*Corp.* 521 U. S. 179, 185-86; 117 S. Ct. 1984; 138 L. Ed. 2d 373 (1997); *Rotella*, 528 U. S. at 554-

55. In *Klehr*, the Supreme Court rejected the last predicate act rule for "two basic reasons." First,

17

it "creates a limitations period that is longer than Congress could have contemplated." 528 U. S. at

187. Second, the last predicate act rule:

> is inconsistent with the ordinary Clayton Act rule, applicable in private antitrust treble damages actions, under which 'a cause of action accrues and the statute begins to run when a defendant commits an act that injures a plaintiff's business.'" Citing *Zenith Radio Corp. v. Hazeltine Research, Inc.*, 401 U. S. 321, 338, 91 S. Ct. 795, 806, 28 L. Ed. 2d 77 (1971).

528 U. S. at 188. In *Rotella*, the Supreme Court also eliminated the "injury and pattern discovery"

rule for similar reasons.  The Court stated that "[a] pattern discovery rule would allow proof of a

defendant's acts even more remote from time of trial and, hence, litigation even more at odds with

the basic policies of all limitations provisions." 528 U. S. at 555.  The Court also rejected the pattern

discovery rule because it would "clash" with the statute of limitation in the Clayton Act on which

RICO was patterned.  The Court emphasized this concern:

> This is important because, as we have previously noted, there is a clear legislative record of congressional reliance on the Clayton Act when RICO was under consideration, see *Sedima*, *S.P.R.L. v. Imrex Co.,* 473 U. S. 479, 489, 105 S. Ct. 3275, 87 L. Ed. 2d 346 (1985), and we have recognized before that the Clayton Act's injury-focused accrual rule was well established by the time civil RICO was enacted.  *Klehr*, 521 U. S., at 189, 117 S. Ct. 1984. In rejecting a significantly different focus under RICO, therefore, we are honoring an analogy that Congress itself accepted and relied upon, and one that promotes the objectives of civil RICO as readily as it furthers the objects of the Clayton Act.

528 U. S. at 557.

Though it eliminated the last predicate act and the injury and pattern discovery rules, the

*Rotella* Court expressly declined to settle on a final rule. *Rotella.* 528 U. S. at 554, n. 4.  The Court

recognized that Justice Scalia (and Justice Thomas) have espoused the injury occurrence rule, and

stated "our decision in *Klehr* leaves open the possibility of a straight injury occurrence rule." *Id.*  For

the reasons stated in *Rotella* and in Justice Scalia's concurrence in *Klehr*, the injury occurrence rule

18

applies to RICO claims. Nevertheless, Plaintiff's RICO claims are time-barred regardless of whether this Court applies the injury occurrence rule or the injury discovery rule.

> **b.      Plaintiff's RICO claims are barred under the injury occurrence rule**

Careful review of its decisions on the time limits in RICO cases compels the conclusion that the Supreme Court will adopt the injury occurrence rule for civil RICO cases when it finally takes up that issue. The principle which the Court has consistently followed is to apply the limitation provisions of the Clayton Act to civil RICO claims. It adopted the Clayton four-year statute of limitation because Congress patterned civil RICO on the Clayton Act. As discussed above, the Court also has rejected potential accrual rules for RICO which conflict with the limitation provisions under the Clayton Act. *Klehr*, 521 U. S. at 188-189; *Rotella*, 528 U. S. at 557. This approach reflects Congress' intent:

> Both statutes share a common congressional objective of encouraging civil litigation to supplement Government efforts to deter and penalize the respectively prohibited practices. The object of civil RICO is thus not merely to compensate victims but to turn them into prosecutors, "private attorneys general," dedicated to eliminating racketeering activity. n3 521 U.S. at 187 (citing Malley-Duff, 483 U.S. at 151) (civil RICO specifically has a "further purpose [of] encouraging potential private plaintiffs diligently to investigate"). The provision for treble damages is accordingly justified by the expected benefit of suppressing racketeering activity, an object pursued the sooner the better. It would, accordingly, be strange to provide an unusually long basic limitations period that could only have the effect of postponing whatever public benefit civil RICO might realize. The Clayton Act avoids any such policy conflict by its accrual rule that "generally, a cause of action accrues and the statute begins to run when a defendant commits an act that injures a plaintiff's business," *Zenith Radio Corp. v. Hazeltine Research, Inc.*, 401 U.S. at 338, and the Clayton Act analogy reflects the clear intent of Congress to reject a potentially longer basic rule under RICO.

*Rotella*, 528 U. S. at 558. Both RICO and the Clayton Act require that a plaintiff show injury "in his business or property by reason of" a violation of the act. *Agency Holding*, 483 U. S. at 151. Under the Clayton Act, the statute of limitation begins to run when a defendant commits an act that injures

a plaintiff's business. *Zenith Radio Corp. v. Hazeltine Research, Inc.*, 401 U. S. at 338. In his

concurrence in *Klehr*, Justice Scalia cogently and convincingly refuted a "mix-and-match" approach

that would allow the Court to apply the Clayton Act statute of limitation to civil RICO but not the

corresponding accrual rule. *Klehr*, 521 U. S. at 198-201.

> '[W]e find no support in our cases for the practice of borrowing only a portion of an express
> statute of limitation. Indeed, such a practice comes close to the type of judicial policymaking
> that our borrowing doctrine was intended to avoid.' *Lampf, Pleva, Lipkind, Prupis &
> Petigrow v. Gilbertson*, 501 U. S. 350, 352 n. 8, 11 S. Ct. 2773, 2782, n. 8, 115 L.Ed.2d 321
> (1991) (emphasis added). ... **When we adopt a statute of limitation from an analogous
> federal cause of action we adopt it whole, with all its accouterments.**

521 U. S. at 200-01 (emphasis added). Justice Scalia correctly observed: "We would thus have been

foolish, in *Malley-Duff*, to speak of 'adopting' the Clayton Act statute, and of 'patterning' the RICO

limitations period after the Clayton Act, if all we meant was using the Clayton Act number of years."

521 U. S. at 199. A review of the Court's unanimous decision in *Rotella* shows that the Court has

embraced Justice Scalia's analysis. As discussed above, *Rotella* relied heavily for its reasoning on

the Clayton Act analogy and the common objectives of promoting "private attorneys general" with

the carrot of treble damages in both antitrust and civil RICO cases. In addition, the Court tellingly

repeated its observation that "there is a clear legislative record of congressional reliance on the

Clayton Act when RICO was under consideration . . . and we have recognized before that the

Clayton Act's injury-focused accrual rule was well established by the time civil RICO was enacted."

528 U. S. at 577; citing *Klehr*, 521 U. S. at 189.[7] Therefore, the injury occurrence rule, which

---

[7] In *Klher*, the majority suggested that the use of the discovery rule by the lower courts "may
reflect the fact that a high percentage of civil RICO cases, unlike antitrust cases, involve fraud
claims." 521 U. S. at 191. However, in *Rotella*, the Court rejected the notion that the fact that some
RICO cases involve fraud justifies a different accrual rule. 528 U. S. at 557. ("[T]he connections
between civil RICO and fraud is an insufficient ground for recognizing a limitations period beyond
four years.") This further reinforces that the Court will adopt the injury occurrence accrual rule in
civil RICO as it has in antitrust cases.

applies in the Clayton Act cases, is the correct accrual rule in civil RICO cases.

Plaintiff's claims are barred under the injury occurrence rule. The alleged injury occurred when Plaintiff disbursed its funds at the loan closings. Complaint ¶¶75, 101, 102, 118.

The Sixth Circuit has held that "'injury to property' for RICO purposes is generally determined by State law." *Isaak v. Trumbull Sav. & Loan Co.*, 169 F. 3d 390, 397 (6th Cir. 1999). Under Michigan law, in an action based on fraud or misrepresentation the injury occurs when the defrauded party parts with property based upon the false representations. *Merlau v. Kalamazoo Circuit Judge*, 180 Mich 393, 397; 147 N. W. 503 (1914). In *Merlau*, the Michigan Supreme Court stated, "it is not necessary that default should occur in [a] contract as a condition precedent to bringing suit for fraud." *Id.* The Court held that the fraud was completed, and thus the injury occurred, "when defendant, by his false representations, induced realtor to deed her property to him, and a right of action then accrued." *Id.* Thus, Plaintiff's RICO claims accrued when it disbursed the loans as a result of the alleged misrepresentations and false documents.

The Complaint alleges that Defendants Sweeney and Bazzi[8] were involved in fourteen fraudulent loan transactions – thirteen involving Sweeney and one involving Bazzi. Complaint ¶104 referencing ¶102. All fourteen of those loan transactions closed in 2005, the last one closing on December 9, 2005. Complaint ¶102(pp). The last of Plaintiff's RICO claims against REO were barred on December 9, 2009 under the four year statute of limitation. Plaintiff's Complaint was filed on May 12, 2010 and, therefore, is time-barred as to REO. This Court should grant Defendant REO's motion for summary judgment.

---

[8] As set forth above, the only allegations in Plaintiff's Complaint tying REO to the criminal enterprise are the unauthorized fraudulent and illegal acts of REO's independent contractors Sweeney and Bazzi. Therefore the relevant transactions are those allegedly involving Sweeney and Bazzi. Plaintiff does not allege that REO was involved in any loan closing.

21

c. **Plaintiff's RICO claims are barred under the injury discovery rule**

There are no published Sixth Circuit decisions which address the proper accrual rule for RICO after *Rotella*. Two unpublished opinions ostensibly embraced the "injury discovery" rule. *Taylor Group v. ANR Storage Co.* 24 Fed Appx. 319 (6th Cir. 2001); *Sims v. Ohio Cas. Ins. Co.*, 151 Fed. Appx. 433 (6th Cir. 2005). However, these opinions did so without any consideration of the injury occurrence rule, and without any acknowledgment that the Supreme Court has not decided which accrual rule governs in civil RICO cases. In *Taylor*, the panel simply, and incorrectly, stated without discussion: "The limitations period for RICO claims accrues when a plaintiff knew or should have known of an injury." 24 Fed. Appx. At 325, citing *Rotella*.[9] In *Sims*[10], the court affirmed summary judgment dismissing plaintiffs' RICO claims based on the statute of limitation. However, the court, again without discussion of the injury occurrence rule and the accrual issue left open in *Rotella*, incorrectly cited *Rotella* as holding that the four-year period begins to run when a party knew, or through exercise of reasonable diligence should have discovered, that the party was injured by a RICO violation." 151 Fed. Appx. at 435. Consequently, there is no controlling authority in the Sixth Circuit that requires this Court to apply the injury discovery rule and, as demonstrated above, the injury occurrence rule governs the accrual of a civil RICO claim.

---

[9] The appeal in *Taylor* did not involve the statute of limitation. The district court granted summary judgment based upon *res judicata* because of a prior adjudication in a Michigan state court action. The district court did not even address the statute of limitation. *Taylor Group v. ANR Storage Co.*, 1995 WL 653294 (W.D. Mich 1995). On appeal, the court affirmed summary judgment based on *res judicata*. The court then *sua sponte* stated that the dismissal of plaintiffs' fraud claim in State court also would have justified dismissal of the RICO action based on the statute of limitation. Thus, the court's reference to the RICO statute of limitation was unnecessary to its decision and was merely *dicta*.

[10] *Sims* was decided by a two-judge panel after the third judge recused himself after oral argument.

Nevertheless, Plaintiff's RICO claims are barred under the injury discovery rule. Under that rule, the clock starts ticking "when a plaintiff knew or should have known of his injury." *Rotella,* 528 U. S. at 553. Further, the Supreme Court has emphasized that "discovery of the injury, not discovery of the other elements of a claim, is what starts the clock." *Id.* at 555. In addition, prior to *Rotella*, the Sixth Circuit held that the statute of limitation begins to run when the plaintiff is put on inquiry notice – i.e., when plaintiff has been presented with evidence suggesting the possibility of fraud. *Isaak*, 169 F. 3rd at 399 ("Inquiry notice is triggered by evidence of the possibility of fraud, not full exposition of the same itself."):

> The plaintiff need only possess a low level of awareness; he need not fully learn of the alleged wrongdoing. Knowledge of all facts is not required to set off the prescriptive clock. Thus, the clock begins to tick when a plaintiff senses "storm warnings," not when he hears thunder and sees lightning.

*Id*, quoting *Harner v. Prudential-Bach Sec., Inc.*, 35 F. 3d 565 (table), 1994 WL 494871, at 4 (6th Cir. 1994).

As set forth above, REO escrowed the commissions, notified Federal, State, and local prosecutors of Defendant Sweeney's fraudulent transactions, and its belief that Sweeney engaged in criminal activity, on December 16, 2005, only seventeen (17) days after the closing of the last Sweeney transaction identified in the Complaint. (**Exhibit D**). After Sweeney filed suit against REO in State court to recover her commissions on these fraudulent transactions, REO moved to interplead the commissions and insisted that the lenders on all fraudulent deals, including Plaintiff Fremont, be notified of Sweeney's activities. As a result, Sweeney served a copy of her motion for summary disposition on Fremont, and REO served a copy of its response to the motion on Fremont. (**Exhibit H**). REO's response to the motion expressly put Plaintiff Fremont on, at the very least, inquiry notice of Sweeney's fraudulent activities. REO served Fremont with the response to the

23

motion on May 8, 2006. Finally, Fremont executed and delivered to Sweeney and REO a Waiver and Consent stating that Keefe E. Roberts, on behalf of Fremont reviewed the relevant documents and consented to the disbursement of the commissions to Sweeney. **Exhibit I**. Plaintiff had more than "storm warnings," but instead was shown the lightning and thunder, and yet failed to take any action until more than four years later. Therefore Plaintiff's RICO claims against REO are barred under the injury discovery rule and this Court should grant summary judgment to REO.

IV.  **CONCLUSION AND RELIEF REQUESTED**

Plaintiff's complaint fails to state a claim for relief which is plausible on its face because it failed to plead any facts that would make REO liable for the fraudulent and criminal actions of Sweeney and Bazzi. Instead, Plaintiff has alleged mere conclusions which are not entitled to the assumption of truth. Therefore Plaintiff's Complaint should be dismissed as to REO under Fed. R. Civ. P. 12(b)(6). Further, summary judgment should be granted in favor of REO based upon the four year statute of limitation for RICO violations as the Plaintiff's claims are time-barred under both the injury occurrence and the injury discovery rules. REO is an innocent party that did everything possible to put Plaintiff on notice of and stop the criminal and fraudulent activities of Sweeney and Bazzi. Fremont chose to ignore REO's warnings for more than four years. REO was manifestly not

part of any racketeering enterprise. Allowing Plaintiff to proceed to discovery in this matter would

create unjustifiable cost and expense to REO.  Plaintiff's Complaint should be dismissed.

Respectfully submitted,

WOOD, KULL, HERSCHFUS, OBEE & KULL, P.C.


By: _____ /s/ John A. Obee _____
            John A. Obee (P29216)
            jao@woodkull.com
            Attorneys for Defendant Real Estate One, Only
            37000 Grand River Avenue, Suite 290
            Farmington Hills, MI  48335
            (248) 476-2000

Dated:   July 19, 2010

25

**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION**

FREMONT REORGANIZING
CORPORATION,

          Plaintiff,

vs.

                                      Case No. 2:10-cv-11923
                                      Hon. David M. Lawson

RONNIE DUKE, et al

          Defendants.

_____

## **PROOF OF SERVICE**

I hereby certify that on July 19, 2010 I electronically filed the following:

    1.     Real Estate One, Inc.'s Motion to Dismiss and Motion for Summary Judgment;

    2.     Real Estate One, Inc.'s Brief in Support of Motion to Dismiss and Motion for Summary Judgment

with the Clerk of the Court using the ECF system which will send notification of such filing to the

following:

Michael C. O'Mally (P59108)
momalley@kallashenk.com

Ari M. Charlip (P57285)
acharlip@hertzschram.com

Dora A. Wilkerson (P49088)
dwilkerson@rmrtt.com

Elias Muawad (P41632)
elias@muawadpc.com

(there are no manual mailing recipients)

                                    /s/ Marcia A. Palus
                                Assistant to John A. Obee
                                  mpalus@woodkull.com